UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN FERNANDEZ,<br><br>    Petitioner,<br><br>  v.<br><br>A. P. KANE, warden,<br><br>    Respondent.<br>_____/ | No. C 05-4566 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

Martin Fernandez, a prisoner at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Martin Fernandez was convicted in Los Angeles County Superior Court of second degree murder and two counts of assault with a deadly weapon. He was sentenced to a term of 15-to-life plus three years in prison in 1981. His habeas petition does not concern that conviction directly, but instead focuses on an August 23, 2002 decision by a panel of the Board of Prison Terms ("BPT") finding him not suitable for parole.

The BPT identified several factors in support of its determination that Fernandez was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released. The factors identified included the circumstances of the offense, pre-offense behavior, in-prison behavior, and inadequate parole plans. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the

Discussion section later in this order.

Fernandez sought relief in the California courts. The Los Angeles County Superior Court denied his petition for writ of habeas corpus in 2004 in a reasoned order. See Lodgment # 7. The California Court of Appeal summarily denied his petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review.

Fernandez then filed his federal petition for a writ of habeas corpus. This action started in the U.S. District Court for the Central District of California and, after some proceedings were held and the matter was fully briefed, was transferred to this district. In his First Amended Petition, Fernandez alleges the following claims: (1) the BPT's denial of parole based on the evidence presented and the Governor's failure to review and reverse that decision violated his right to due process, (2) there is no evidence that his crime was more egregious than other second degree murders, (3) there is no evidence that he poses a threat based on psychological reasons or failure to participate in programming, and (4) the BPT failed to apply the matrix. Claims 1-3 involve a question of the sufficiency of the evidence to support the decision, claim 1 also presents an argument that due process required the Governor to review the decision, and claim 4 concerns the state law requirements regarding a sentence matrix. Respondent filed an answer. Petitioner did not file a traverse. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action occurred at the Correctional Training Facility in Soledad, in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

2

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A. Sufficiency Of Evidence Claim

    1. Due Process Requires That Some Evidence Support a Parole Denial

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence"

3

1  supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for
2  disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To
3  determine whether the some evidence standard is met 'does not require examination of the entire
4  record, independent assessment of the credibility of witnesses, or weighing of the evidence.
5  Instead, the relevant question is whether there is any evidence in the record that could support
6  the conclusion reached'" by the parole board. Id. at 1128 (quoting Superintendent v. Hill, 472
7  U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so
8  devoid of evidence that the findings of the . . . board were without support or otherwise
9  arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457). The some evidence
10 standard of Superintendent v. Hill is clearly established law in the parole context for purposes
11 of § 2254(d). Sass, 461 F.3d at 1129.

12  Furthermore, and of key importance, the parole board is not precluded from relying on
13 unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-
14 offense behavior in determining parole suitability. See id. at 1129 (commitment offenses in
15 combination with prior offenses provided some evidence to support denial of parole). The
16 familiar argument that the BPT cannot rely on these factors is based on the Ninth Circuit's
17 statements in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), that suggested that the value of
18 the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's
19 decision is one of 'equity' and requires a careful balancing and assessment of the factors
20 considered. . . . A continued reliance in the future on an unchanging factor, the circumstance
21 of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
22 espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at
23 916-17. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely
24 on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that
25 "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of
26 rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and
27 prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916.
28 These statements were dicta and not clearly established federal law as set forth by the Supreme

1  Court, such that the state court's refusal to adopt the <u>Biggs</u> reasoning would be a decision
2  contrary to, or an unreasonable application of, clearly established federal law as set forth by the
3  Supreme Court.  The Ninth Circuit recently backed away from the <u>Biggs</u> statements, and
4  confirmed that these statements from <u>Biggs</u> were dicta and were inappropriate under § 2254.
5  <u>See</u> <u>Sass</u>, 461 F.3d at 1129.  "Under AEDPA it is not our function to speculate about how future
6  parole hearings could proceed."  <u>Sass</u>, 461 F.3d at 1129.         What little guidance has come
7  from the Supreme Court suggests that judicial review should be extremely deferential to the
8  original decision-maker in the parole context.  In addition to the very low evidentiary standard
9  that <u>Superintendent v. Hill</u> imposes, other Supreme Court comments suggest that the judiciary
10 should be quite mindful of the subjective and predictive nature of a parole board's decision.  <u>See</u>
11 <u>Greenholtz</u>, 442 U.S. at 13.  "No ideal, error-free way to make parole-release decisions has been
12 developed; the whole question has been and will continue to be the subject of experimentation
13 involving analysis of psychological factors combined with fact evaluation guided by the practical
14 experience of the actual parole decisionmakers in predicting future behavior.  Our system of
15 federalism encourages this state experimentation."  <u>Id.</u>; <u>see also</u> <u>id.</u> at 8.

16    Past criminal conduct is not some arbitrary factor like eye color that  has nothing to do
17 with present dangerousness.  Recidivism concerns are genuine.  <u>See</u> <u>Ewing v. California</u>, 538
18 U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were
19 arrested again within three years of their release).  California's parole scheme does not offend
20 due process by allowing the BPT to predict that an inmate presents a present danger based on
21 a murder he committed many years ago.

22    Having determined that there is a due process right, and that some evidence is the
23 evidentiary standard for judicial review, the next step is to look to state law because that sets the
24 criteria to which the some evidence standard applies.  One must look to state law to answer the
25 question, "'some evidence' of what?"

26
27
28

5

2.    <u>State Law Standards For Parole For Murderers In California</u>

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a minimum term of 25 years to life and a second degree murder conviction yields a base term of 15 years to life imprisonment. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.), <u>cert. denied</u>, 126 S. Ct. 92 (2005); Cal. Penal Code § 190. The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is substantial.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1] The regulation also

---

[1] The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show <u>suitability</u>

6

provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2402(b).

The regulations contain a matrix of suggested base terms for several categories of crimes. See 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some of the facts of the crime. Some prisoners estimate their time to serve based only on the matrix. However, going straight to the matrix to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant statute and regulations that requires him first to be found suitable for parole.

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 Cal. 4th at 1070-71. Under state law, the matrix is not reached unless and until the prisoner is found suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each life prisoner who is found suitable for parole"). The California Supreme Court's determination of state law in Dannenberg is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable. "While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for

---

for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

7

the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense").

### 3. Some Evidence Supports The BPT's Decision In Fernandez's Case

The BPT identified several factors supporting its decision to find Fernandez unsuitable for parole, i.e., the circumstances of the offense, pre-offense behavior, in-prison behavior, and inadequate parole plans. The Los Angeles County Superior Court upheld the decision in a reasoned order. See Lodgment # 7. The Los Angeles court stated that some evidence had to support the decision and found that some evidence did support the decision. See id. at 1-2. The state court applied the correct legal standard, as evidenced by its citation to In re Rosenkrantz, 29 Cal. 4th at 667, which had cited and adopted the Superintendent v. Hill some evidence standard as the proper standard for judicial review of evidentiary sufficiency for parole denial cases. See Rosenkrantz, 29 Cal. 4th at 665-67. Because the Los Angeles County Superior Court's decision is the last reasoned decision, that is the decision to which 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

#### a. Commitment Offense

The BPT considered the circumstances of the murder and concluded that it was an carried out in an especially cruel manner. The BPT determined that the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering and was for a trivial motive. In response to some boys chasing him off high school grounds where he was playing handball, the 19-year old Fernandez went home, got his two brothers and a knife, and went back to the school. A fight ensued, during which Fernandez stabbed the 14-year old victim. RT 52-53. Fernandez does not challenge the recitation of the facts of the crime by the

BPT or by the state court, although he may disagree with the meaning of those facts.

A circumstance tending to indicate unsuitability for parole is that the prisoner "committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1). The factors to be considered in determining whether that circumstance exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled or mutilated during or after the offense," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1). The BPT considered a circumstance and factors proper under California law.

There was some evidence in the record to support the BPT's determination that the circumstances of the commitment offense indicated unsuitability. The record supported a determination that murder was committed in a very cruel and callous manner in that multiple victims were attacked, even if only one was killed. The motive for the killing was very trivial: Fernandez killed a boy for chasing him off a playground. There also was some evidence that Fernandez and possibly the victim had different gang affiliations. RT 9. The BPT identified more than the minimum elements of a second degree murder when it determined that Fernandez committed the murder in a very cruel manner and with an exceptionally callous disregard for human suffering, as Fernandez had gone home after the initial encounter with the victim, had retrieved human support and weapons (i.e., he and his two brothers returned with a knife and steel bars, according to one report, see Lodgment #2) to return to deal with the people who had just chased him off the playground. See RT 8-9. That evidence suggests a planned attack, and that planning as well as the assault with a deadly weapon on two other victims shows more than the minimum elements of a second degree murder. See Dannenberg, 34 Cal. 4th at 1071.

b. Pre-Offense Behavior

The BPT also relied on Fernandez's pre-offense history for its determination that he was not suitable for parole. Fernandez committed the murder while he was on parole from the

California Youth Authority. RT 53. "The prisoner has, on previous occasions, inflicted or attempted to inflict serious injury on a victim. An escalating pattern of conduct and he has failed previous grants of probation. He also has failed to profit from society's previous attempts to correct his criminality. Such attempts include juvenile probation, a CYA commitment, and parole." RT 53. He had an unstable social history and prior criminality including arrests for grand theft auto, robbery, and assault with a deadly weapon." RT 53. The record supported these findings.

Consideration of and reliance on Fernandez's pre-offense criminal history was not improper. Although the prisoner's "previous record of violence" on a victim is a specifically listed circumstance and non-violent criminal history is not specifically listed as a circumstance that tends to indicate unsuitability, 15 Cal. Code Regs. § 2402(c)(2), the list of circumstances in § 2402(c) is non-exclusive, and § 2402(b) specifically allows the BPT to consider a great range of relevant and reliable information, such as the prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented." Fernandez's prior criminal activity, as well as the fact that he was on parole could be considered by the BPT as tending to show unsuitability. See RT 10-14 (describing numerous encounters with police). Although the state court referred to Fernandez's juvenile record as including "convictions" for burglary, assault with a deadly weapon, drunk driving and robbery, see Lodgment # 7, p. 1, none of these crimes led to actual convictions because he was a juvenile. See Lodgement # 2. Fernandez had admitted a significant history of criminal activity before committing this crime, regardless of the disposition of the charges: when he was 15 he was put on probation for being in a place where marijuana was smoked, he took his uncle's car without permission, he had burglarized a truck, he had gone joyriding, he had been drunk in public, he had been drunk driving, he had been arrested while in a stolen car, and he had been committed to the CYA after being arrested for robbery and assault with a deadly weapon. RT 10-14. When he killed his victim, he had been on parole for about seven months. RT 14. And he had stabbed someone else a few years before the murder. RT 41.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## c. In-Prison Behavior

The BPT found that Fernandez had not demonstrated sufficient positive change in prison. He had received seven CDC 128s (counseling reports, the last of which was in 1994), and six CDC-115s (serious rules violation reports, the last of which was in 1997).[2] The 1997 CDC-115 was for possession of about a half pound of yeast which he was attempting to hide, which the BPT reasonably saw as preparatory to making home-made alcohol. The psychological report indicated a few problems, such as that Fernandez's "'understanding of this crime is rather superficial and concrete'" and he had a significant risk of return to crime if he continued to abuse alcohol and/or drugs. RT 54.

Consideration of and reliance on Fernandez's prison behavior was not improper. His CDC-115s properly could be considered under § 2402(c)(6), which states that serious misconduct in prison tends to indicate unsuitability. His CDC-128s properly could be considered under § 2402(b) as pertaining to his social history and mental state. His superficial understanding of his crime is certainly not a "serious mental problem" within the meaning of the circumstance specifically enumerated as tending to show unsuitability, see § 2402(c)(5), but could be considered under § 2402(b), which specifically allows the BPT to consider a great range of relevant and reliable information, such as the prisoner's "past and present attitude toward the crime," social history and mental state.

Fernandez strongly disputes this finding of the BPT and argues that there was no evidence that he had psychological problems that could support the denial of parole. The court disagrees. Fernandez's lack of insight into the crime would not alone support denial of parole, but could with the other information tend to show unsuitability. The BPT was reasonably concerned about the risk of Fernandez returning to alcohol abuse. Although Fernandez stated he had participated in AA and NA 12-step type programs whenever he had the opportunity, he was unfamiliar with

---

[2]Respondent submitted evidence that Fernandez received two new CDC-115s after the denial of his parole in 2002. See Lodgment #5. CDC-115s received after the hearing were not considered by the BPT at the 2002 hearing (as they did not then exist), were not relied upon by the state court and were not relied upon by this court. They may be of great significance in consideration of a challenge to the 2004 BPT decision, but have no bearing on the challenge to the 2002 decision.

12

1  basic parts thereof. See RT 20-28, 32, 46. The BPT reasonably could view the overall picture
2  based on the individual parts -- i.e., the prisoner's lack of insight into the crime, plus the risk of
3  him returning to alcohol abuse that would increase the likelihood of failure on parole, plus his
4  institutional involvement with alcohol manufacture, plus his questionable commitment to alcohol
5  education program – as one that tended to indicate unsuitability. "Circumstances which taken
6  alone may not firmly establish unsuitability for parole may contribute to a pattern which results
7  in a finding of unsuitability." 15 Cal. Code Regs. § 2402(b).

### d. Parole Plans

10 The BPT's decision to find Fernandez unsuitable was based also on the BPT's belief that
11 his parole plans were lacking in certainty in that he had no letters actually offering him a job or
12 a place to live, and he had not made arrangements for AA participation after he was released.
13 RT 54.

14 The BPT properly could consider the uncertain nature of the parole plans in support of
15 its decision under § 2402(b), which allows the BPT to consider "any other information which
16 bears on the prisoner's suitability for release." As the BPT noted, there was no evidence in the
17 record, such as letters of support, that supported Fernandez's stated plan that he was going to live
18 with his brother and obtain a job in his father's landscaping business.

### e. There Was Enough Evidence To Support The Decision

21 The BPT noted that Fernandez had various in-prison achievements, but concluded that
22 the positive factors did not outweigh the factors discussed above showing unsuitability. The
23 factors listed by the BPT in support of its determination that Fernandez was not suitable for
24 parole had some evidentiary support. And the factors were factors that could be considered in
25 determining parole suitability. The Los Angeles County Superior Court's rejection of
26 Fernandez's insufficient evidence claim was not contrary to or an unreasonable application of
27 the Superintendent v. Hill some evidence standard. Fernandez is not entitled to the writ on this
28 claim.

13

B.    Other Claims

Fernandez claims that the Governor's failure to review and reverse the decision of the BPT violated his right to due process. This claim is meritless. The preceding section explains that there was sufficient evidence to support the BPT's decision, so the claim fails insofar as it challenges the sufficiency of the evidence. To the extent he claims that the Governor had to review his case, state law provides for discretionary review by the Governor and federal law does not require any review by the Governor. Fernandez therefore had no federal due process right to further review by the Governor. Due process does not include a requirement that there be a further review a parole board's decision within the executive branch of a state government after a parole board has made. The state court's rejection of the claim that due process required gubernatorial review of the BPT's decision will not be set aside because there is no clearly established federal law as set forth by the U.S. Supreme Court for the state court to have acted contrary to or to have applied in an unreasonable way. See 28 U.S.C. § 2254(d).

Fernandez's fourth claim is that the matrix was not properly applied. As explained earlier, the matrix is not consulted and a term is not set under state law unless and until the prisoner is found suitable for parole. See In re Dannenberg, 34 Cal. 4th at 1070-71; 15 Cal. Code Regs. § 2403(a). Fernandez was not found suitable for parole and therefore the matrix did not need to be consulted. Even if Fernandez had a due process right in having state law followed by the parole authority, state law was followed by the parole authority. The claim has no merit.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: October 20, 2006

SUSAN ILLSTON
United States District Judge

14